uh, and we'll call our next case States versus Lewis. Good afternoon, your honors, and may it please the court. My name is Richard Ramsey, and I represent the United States of America. I'd like to reserve three minutes for rebuttal. It's done, thanks. The defendant's prior marijuana trafficking conviction made him a recidivist in the eyes of 4B 1.2 for one simple reason. Before he committed his federal offense, he illegally trafficked a drug that was listed on New Jersey's schedule of controlled substances. We're with you. Look, do the same thing we do the other side, Mr. Ramsey, like dive right into the questions. Okay. I don't think we need background. And this is the thing that's, I've been going around and around about in my own head is, is this, uh, is the point you're arguing for really, uh, a categorical approach at all, or is this, um, just straight up applying a definition to, um, uh, a category of offense? Maybe that's poorly worded. Let me try this again. When I think about the categorical approach, it's in the traditional setting where, you know, somebody has got a state conviction and the law asks you, does that fit against a federal offense? And so you do this, ignore the facts, look only at the law, compare the scope of the two, the federal and the state statute, and ask the question, uh, is it a categorical match or not? In this instance, the United States position is, uh, there's no, you know, you shouldn't be looking at the federal offense at all because that's not what 4B1.2 asks you to do. If that's true, if I've understood the U.S. position on that, why are we talking about the categorical approach? Because we're not comparing a state and a federal statute. We're just asking, did the state control this substance? And that's the only question we're asking. Have I understood the arc of your argument, right, that we're not doing a comparison of federal and state? We're just asking whether this is a controlled substance under state law. Well, we are doing a categorical comparison, but it's not the one that the defendant says that's the match here. We're not comparing elements of the state crime to elements of the federal crime as you would when we're dealing with generic offenses. We're dealing with something that Shular articulates as you measuring the state offense against the criteria that the guidelines use to define controlled substance offense. Why is that? Why are you calling that the categorical approach? That's the thing that's been puzzling me. That's just, that's what we do in every case. We say, okay, does the guideline, does the thing that happened fit the guideline? We don't talk about that as a categorical matching. We just say, does that thing that we're looking at fit within this guideline? How is that a categorical approach? Well, the Supreme Court makes that distinction, Your Honor. And the distinction is not matching elements to elements per se in every case. That's not what every categorical match requires. The Supreme Court in Shular says that in some cases, and this is one of those cases, I think the example that was in Shular was federal drug offense. If you're dealing with these generic terms, they're prescribing conduct. And if the, and the court is required to compare the elements of the state conviction with the criteria that the guideline uses to define what controlled substance offense is. We're not dealing, why are we? That just, I think you just, in a roundabout way, explained why we shouldn't apply the categorical approach here. Well, I'm not saying- Shouldn't we just be engaging in statutory interpretation? I use the word loosely because I know this is the guidelines and not a statute. But, but, you know, when you go back to the, we've got a big circuit split here on this issue, right? And it seems that the circuits that go against you, the, the case that sort of started it all was Lael Vega in the Ninth Circuit. Would you agree? Correct. And what, what's interesting about when you read that case is it immediately jumps to Taylor in the categorical approach. It engages in, in little, if any, textual analysis of what the guideline actually says. Correct. And, and that case didn't have the benefit of Shular, which explains what the categorical approach means in different situations. Right. And if the categorical approach is all about generic crimes like burglary or theft or what have you, we're not dealing with that here. We're dealing with a guideline that, that directly tells us to look at federal or state offenses, right? That's right, Judge. So, so what, I assume you concede the Jerome presumption applies here, right? We're not conceding that. You're not conceding that? All right, why don't you start by telling us why the Jerome presumption doesn't apply? Well, the Jerome presumption only applies when there's no clear indication in the statute or the guideline that, that. No, that means, no, that Jerome presumption applies, but it's overcome by a clear statement. Well, assuming that the. Maybe that's a semantic distinction. Sure, assuming that the Jerome presumption applies, it is overcome in this case. But we are not conceding that the Jerome presumption applies to guidelines cases. The Supreme Court has never done it, and we just don't know. Why is it, even if we didn't have a case called Jerome from the 40s, isn't it sort of axiomatic that when you're dealing with the federal sentencing guidelines, that there should be one standard throughout the country? Because it's the federal sentencing guidelines, and there shouldn't be a situation where a defendant in Nevada gets treated very differently than a defendant in New Jersey. Well, that is the driving force of the minority view, right? That uniformity, that kind of uniformity, is what the categorical approach requires in this case. Well, forget the categorical approach. I'm just talking about the sentencing guidelines. They are the federal sentencing guidelines, so isn't it incumbent upon this court and the Supreme Court to provide some uniformity to federal sentencing? Well, the uniformity that's required here is treating defendants who commit drug trafficking offenses prior to committing their federal offense, treating them all the same way. That's the uniformity that this guideline requires. It's something that's steeped in 994H and I. Well, no, I think your argument is inconsistent with what you just said, at least your argument in the briefs, because as I understand your argument in the brief, that word state in the guideline has to do some work. And if that word state refers to, if you can have controlled substance offenses, not only under the CSA, but also under the 50 states, because states can control substances and list them in drug schedules. If we accept that that word state means what you say it means in your brief, then it follows that there could be some disparities because, for example, there may be somebody on a street in Portland, Oregon right now with heroin. And another person in Allentown with the same quantity of heroin. And that guy in the street of Allentown may be picked up and convicted of a crime and the guy in Portland is not. So when both of those guys come five years hence on a 922G case, and they go into federal court for sentencing, the guy from Allentown, under your argument, is going to have a qualifying conviction for heroin, and the guy in Portland isn't. So that means they're gonna be treated differently even though they're behaving the same way, right? Because Oregon has chosen to treat drug possession or to treat drugs differently than Pennsylvania. Right, but I think the key there is that we're dealing with a recidivism guideline. And so recidivism is, to deal with that or to address that, you've got to look at whether a defendant has committed a past drug trafficking offense, whether that's in Oregon, whether that's in Nevada, wherever that offense- So what you're saying is under my hypo, the government can't do anything about the fact that the guy in Oregon skates for heroin and the guy in Allentown gets prosecuted. The point is, if the guy in Allentown gets prosecuted for heroin, when he comes forward on a 922G, he's gonna be treated as a recidivist under the federal sentencing guideline. Yes, your honor. And that's required not because of the categorical approach or the modified categorical approach. It's required because that's what the language of the guideline says. Okay, so there we go. So why are we talking about the categorical approach? And I'm coming back to it cuz it's important. At some point, both sides want us to write something on this. Why would we write this in terms of the categorical approach, when what's being asked is, does this fit the guideline? Not, is there some match between a federal offense and a state offense? We're left with the categorical approach because of Taylor. Wait, are you saying that if you accept, that if we don't frame this as a categorical approach issue, the US loses? No, we are not saying that, your honor. We are acknowledging that the categorical approach does impact how courts interpret the guidelines. But it's not one size fits all with the categorical approach. There is an aspect of the categorical approach that the Supreme Court and Shuler says, hey, let's take a different view and let's apply the categorical approach in a way that is consistent with the statute. Is there ever been any circumstance where somebody has said, I mean, I recognize that you're walking carefully because the other side and the amici have said, look at this radical move the government's trying to make here. They want you to throw Taylor right out the window and the whole categorical approach, they're ready to send it on the ash heap. And that's, they're slightly more elegant than that, but they're saying that's horrifying, you can't do that. So I see the government buying into it, but I'm really struggling with how we would write this and talk about the categorical approach when we're not comparing a state and a federal offense. The only thing we're doing is saying, does the guideline, does this thing fit the guideline? And I've just never, ever, can you point us to anything else, any other circumstance where you're just applying law to a set of facts? Fundamentally, that is what we're asking this court to do, is to interpret the guideline. Okay, so the government would not fear that it was weren't framed as the categorical approach? Absolutely not, your honor. All right, well then let's, let me ask you a question. So the timing issue? Yeah, exactly. Let me ask you whether we even have to get to the issue that we've been talking about right now. Because don't you still win if it's the 2012 New Jersey versus the 2012 federal law? Yes, however, we're dealing with a recidivism statute or recidivism guideline and those are backward looking. So if the court were to try to compare the statute then to federal or state statute now, then- But I didn't say now. Okay. I said, if we accept, I thought I understood you to be arguing that just what you said, backward looking. Look at what was, the offense was in 2012. And then the question is, look at the federal guideline and the 2012, excuse me, whether the hemp is in or out for CSA purposes is irrelevant. Right. You just, you don't even have to look at that. Right. Because you're asking the question federal compared to state, even if you accept the federal law approach, even if you accepted their argument, that it's not the state law approach, it's the federal law approach. And you were comparing state to federal, you'd still win. Did I misunderstand that? No, you're correct. You're correct, Judge. So if the federal government's right in this, what's the right way for us to approach it? Do we dive into this big circuit split and wrestle the question whether the Jerome presumption applies, whether it's overcome, whether it's a categorical approach, whether it's not, or do we just say, look, it doesn't matter because even if the federal law approach works under Brown and under the recent Sixth Circuit opinion, Clark, it's 2012 to 2012, fed, state, and. Certainly the latter. And there is no circuit split on the timing question.  out in the government's favor. Okay. I'm awake. I'm just, I'm deep in thought. I'm not sure. Are you sure there's not a circuit split on the timing issue? Not with respect to the guideline. All right. But the, as I understand, I just want to make sure I understand your argument on the timing issue, which is that, that by their very nature, recidivist statutes require you to look back at what the law was at the time the qualifying conviction occurred. That's correct. And you don't, as someone who represents the United States in court, you're not going to tell us that for purposes of federal sentencing, district judges aren't supposed to apply the current version of the guidelines at the time of sentence. We are not saying that. That's axiomatic. Right. Okay. Okay. Thank you, Mr. Ramsey. We'll have you back on rebuttal. Thank you, Your Honor. May it please the court. Danielle Stemple for the appellee, Jamar Lewis. I'd like to start where you started with the government, which is the question of the categorical approach. I think there are a couple of reasons that it certainly applies here. The first is that before the district court, the government argued the categorical approach did not apply, and you'd only need to look to the ordinary meaning. It then changed tack on appeal. It agreed, as the district court said, that that approach was not possible under Supreme Court law. Which is, in fact, what I think I heard my friend on the other side say several times today until you finally pushed him to say- What's not possible under Supreme Court precedent? It's not possible to not apply the categorical approach. And tell us, cite to us where that was conceded. It was briefed the other way at JA99, and at 175, before the district court, the government said the plain and ordinary meaning of 4B1.2 does not require application of the categorical approach. But then on 10-11 of the opening brief, and again today at argument, the government said the categorical approach applies to this question. And I'd like to point you to two Supreme Court cases that I think make that pretty clear. The first is Shuler, which is the same case the government referenced- Sure, what was going on in Shuler? Shuler, the defendant argued, you would use the generic offense analysis under ACCA when determining if something counts as distribution or possession with intent of a controlled substance. Because you're comparing two things. You're comparing a generic offense with a specific offense of conviction, right? That's what the defendant argued, Your Honor, and the Supreme Court said no. This is not a generic offense comparison. It's a different type of the categorical approach. So they're arguing it's not a generic offense at page 11 of their brief. We agree with that. It's not a generic offense analysis. Right, and the government says the question is whether Lewis's prior conviction fits within the guideline's definition of a controlled substance offense. That seems to be precisely what Judge Jordan started the argument by asking. Do we just look at what the definition of the guideline is? But I think that's part and parcel of this second Shuler categorical approach, and that's what Shuler says. It says when you're doing this possession with intent to distribute controlled substance, you're doing a different type of the categorical approach, and it points as an example to Stoeckling. So Stoeckling was a force clause case, and there the court said we need to use the categorical approach because we need a consistent uniform comparator for every defendant who's potentially got a force clause. All right, but why in this case would we need a uniform comparator when the guideline specifically says federal or state? Isn't that about as clear a textual cue as the federal courts could have that we ought to take a look at whether these offenses are controlled substance offenses under state law? It's about as explicit as it gets. Your Honor, I think as explicit as it could have gotten would be a substance controlled under federal or state law, and that's not what the guideline says. Well, that might have been a better way to do it, but you're asking us to read state law out of the statute. You want us to have recourse only to the CSA, correct? Yes, that's what I'm doing. CSA is a federal law, not a state law, right? That's correct. So what work under your approach does the phrase or state law do? It's telling you what kind of offense, assuming it matches punishable by more than a year, possession, et cetera, with a controlled substance, what kind of offense can count, and I would point you to 2L1.2, which defines two other- I'm sorry, you're saying that we look to see whether the state law was punishable under the state statute by more than a year? No, Your Honor. My point is, if it matches everything else- Well, wait, let me go back and break it down more simply. State conviction. We're asking whether this state conviction for marijuana possession or distribution qualifies under this guideline, right? Right. Okay, so if the marijuana conviction, forget Mr. Lewis's facts for a minute, if the marijuana conviction under the laws of Pennsylvania was punishable by 11 months, is that a qualifying conviction? If it's the maximum punishment is 11 months, no. Okay, all right, so we have to look to the state law to see what the maximum punishment is to see if this guideline is triggered, correct? That's correct, because you're looking- So why wouldn't we similarly look to whether the substance of conviction is a controlled substance under state law? If you're looking at state law for the timing, why wouldn't we also be looking to state law for the substance? I think there are three answers, Your Honor. The first is the timing is easy because it's fixed. It says a year. You could imagine a circumstance in which it said felony, but felony wasn't something that had an obvious ordinary meaning, and you'd go through this Shuler categorical approach to figure out what does that mean here? And then you do that comparison. I'm sorry to interrupt, but you gotta tell me what the Shuler categorical approach is. Apologies. Because I've heard you do this, and Mr. Ramsey do this, and I'm just reading Shuler, and it says, we ask only whether the elements of the prior conviction constitute burglary. We do not ask what the person did or whether the offense of conviction was named burglary. What's different in Shuler that makes it a special and a new kind of categorical approach? Well, I don't think Shuler's special and new because it points to Kawashima and Stoeckling as doing this other version, so I think- Okay, then call it the new Stoeckling approach. Or Shuler category two. What's the new thing that it's doing that's different? I think what Stoeckling does is Stoeckling says, we have this word force. Force is not like burglary. You can't do an elements to elements comparison. So instead, it looks to ordinary meaning, dictionaries, federal and state criminal codes. Now the oddity- But in the end of the day, in Stoeckling too, it says where the applicability of a federal criminal statute requires a state conviction, we've repeatedly declined to construe the statute in a way that would render it inapplicable in many states. So what are we gonna do? We're gonna look and see like, what's the sort of generic thing that makes sense? And we've got an idea about that. You're still, in all of these cases, you're comparing a federal thing against the state thing. That's the very definition of the categorical approach. Is the only reason to hang onto this because it allows the defense to pull the CSA into it and otherwise you couldn't because 4B1.2B is perfectly clear in saying state offense? No, Your Honor. So I think the government could have said, you do what you did under Stoeckling and you have to do this multi-jurisdictional 51, state plus federal law survey plus ordinary meaning and determine kind of what does everyone consider- The sensing judge doesn't do a survey. No. The sensing judge looks at the defendant's record and then asks a simple question. Was the prior conviction that the government claims is a qualifying conviction, was that a controlled substance offense under Pennsylvania law or under New Jersey law? And here we've got New Jersey, right? So clearly this was a controlled substance offense under New Jersey law. Or is it your argument that states are not allowed to control substances? Is that your argument? That's certainly not our argument. Okay, so if states can control substances and the guideline says a qualifying conviction includes controlled substance offenses under federal or state law, then all the able district judge needs to do is to ask, does New Jersey schedule this or not? If New Jersey doesn't schedule it, it's not a controlled substance offense. If New Jersey does, it is. And that's a lot like looking at, is this crime punishable by a year and a day or more or not? I think- It's very binary, isn't it? I think the problem is that the phrase controlled substance is not limited to only federal or state law, even under the government's definitions, right? It's anything regulated by law. So if you had a conviction under 2L1.2- Wait, wait, you lost me there. The government's position- It's anything- The government's dictionary- Forget what the government said. Okay. Did I hear you just say that it can be a controlled substance by law, but not federal or state law? Yes. So we're talking about the laws of England? Localities and foreign governments, because this is the issue. But that's not what the guideline says. The guideline, if Mr. Lewis had come into the New Jersey federal court and he had a conviction for doing something in England, that does not meet the guideline because the guideline says federal or state law. I thought your point was, there's no dispute about the controlled substance offense. There's a question of what constitutes a controlled substance that trigger a controlled substance offense, and that that's where it creates a problem. So is that what you're arguing? Yes, that's certainly part of our argument. Sure. I think the guidelines define a controlled substance offense as having three criteria. It's an offense under federal or state law. So as Judge Hardiman just said, a conviction from England won't count under 4B1.2. It has to be punishable by more than a year, so that rules out misdemeanors. And the third is that involves a specific type of conduct associated with a controlled substance. Now the problem comes because controlled substance, the ordinary meaning is a substance regulated by law. That doesn't tell you if you can look to federal, state, foreign, or local law. The guideline does tell you that, because immediately after the words controlled substance are the words offense under federal or state law. That's the curious thing here. You're, it seems a strain to say, who can figure out what this means? Who can figure out what this means? I don't think that's right, Your Honor. Because the guidelines aren't saying a substance scheduled under federal or state law. They're saying a conviction under state law that otherwise matches. So if you replaced the phrase controlled substance with force. Where does it say otherwise matches? That's not on the guidelines. That's the premise of the categorical approach. All right, so it sounds like we get right back to where we started. Just like the other argument, where as complicated as these cases are, sometimes they turn on what the premise of the case is. And it sounds like your premise of the case is, and it's a good argument, because other circuits have done it, right? Every other circuit has applied the categorical approach in this analysis, yes. Well, but some have applied it first. Interestingly, when you look at the circuits that went the other way, the fifth. Yep. You know, Lael Vega, as I read these cases, they all sort of follow pretty closely what Lael Vega did. And Lael Vega's, the Ninth Circuit's move was to immediately talk about Taylor and jump to the categorical approach. So if you immediately get into a mindset of looking at whether there is concordance, perfect overlap between the state schedule and the CSA, you're gonna prevail. For the same reason the defendants in, well, in one of the Ninth Circuit cases, they then applied the modified categorical approach and said that he still lost. I think that was Gomez-Alvarez. I think that's the, Gomez-Alvarez is the fifth. That's the fifth, I'm sorry. Yeah. So what you're saying is apply a categorical approach like Lael Vega and once you get into that mode of analysis, of course you're gonna win because there's not perfect overlap between state and federal law. The government's argument seems to be, the first thing you do is look at the text of the guideline and the text of the guideline directs the federal sentencing judge's attention and this court's attention to federal and state law, and then you can just stop or if you're going to apply some aspect of the categorical approach, I don't know. I don't know where that takes us because there's nothing that I can remember from any of the many categorical approach cases we've had to wrestle with that allows for variations between the state law, right? The categorical approach is if it's anything, it's one size fits all, correct? Okay. And if it's one size fits all, then the word or state law doesn't mean anything. I don't think that's true. Well, you say it means something for timing, but it doesn't mean anything for, what else does it mean? It means that if a state schedule matches a federal schedule and you were convicted under state law, that offense counts as a predicate. It's not writing these offenses out as the government claims. It's just saying if the state criminalizes more substances, it goes beyond that. What's so strangely impractical about that, so strangely impractical about that, and this isn't your doing, this I suppose is perhaps the Supreme Court's doing, is that under what you just said, somebody convicted of a ticky-tack offense punishable by a year and a day is gonna get hit with a recidivism enhancement. And some other person convicted of a very, very grievous substance offense under state law, where that does not perfectly match with the CSA, that's not gonna count. I don't know what rational world we would inhabit if that were the case. Your Honor, I have two responses to that. And I would point you to Moncrief, which is a Supreme Court case. And in Moncrief, they were talking about the predicates, I believe, under the INA. And they had this, what some people have called more recently, the quarrels presumption that you don't wanna kind of adopt a rule that would take a lot of state offenses off the table. They said, the government said, there's a similar issue here, you'd write all of these marijuana offenses out under the INA. And the Supreme Court said, one, that's what the categorical approach tells us to do. But two, we're not actually that concerned about that here because there's a backstop. And in the INA, the backstop is that the AG still has discretion to render you deportable. And in the guidelines, the backstop is that the district court can still vary upwards as the district court did here. So we are not- I'm glad you mentioned the INA because the government, of course, makes an argument that your position makes language in the INA superfluous.  the guideline the way you're suggesting, then INA language is senseless. What's your response to that? I just don't think that's a fair comparison at all. I mean, you don't say that the commission and Congress, they're separate bodies drafting against separate background presumptions. And you can't make the INA- Don't we presume that Congress legislates against an understanding of what existing law is, including the guidelines? If you are making that presumption, then you can also presume Congress is legislating against the CSA in the Congress through the commission is legislating against the CSA in the guidelines. And that's what Dawson says. In fact, Dawson says- Hold on when you say you can presume. The guidelines went out of their way to take the CSA out of 4B1.2. I don't think that's a fair statement, Your Honor. Well, you say it was a technical amendment, right? Not as Dawson. Okay, but it's also the case that the very same guideline makes a direct reference to federal law and crime of violence. I think that just confirms that the commission was doing what Congress told it, which is look to federal law as the baseline. I don't think that that lack of a cross-reference is a problem here. Well, but I don't know if there's a direct reference to federal law under crime of violence, and in the same guideline, there's not a direct reference to federal law for controlled substance. And in fact, there used to be, and it was taken out. And moreover, if that's not enough, it also says look to federal or state law. I don't think that that interpretation of the amendment history accords with what this court said in Dawson, where Dawson says the starting presumption, the background assumption, is that we're looking to the CSA from the guidelines definition of controlled substance. And it says that despite this lack of cross-reference because Congress, in the Sentencing Reform Act, told the commission to start with the CSA. The Sentencing Commission, in its amendment history, started with the CSA. This amendment was just so they wouldn't have to keep updating the cross-references to the U.S. Code. That's all it is. It's just the happenstance. It used to refer to the CSA. They took it out on purpose, but we shouldn't really read anything into that except for administrative convenience. That's what the guidelines say when they're taking it out. That's the justification the commission gives. No, that isn't what the guidelines say when they take it out. They say this is an amendment for clarification. Now, you say that means it's just technical, but how are we to know that that's what it means and not that clarification means we're taking this out because you're not supposed to be referring to the CSA? That's what we're clarifying. The commission does say this as part of, I think it's part of Amendment 268's history. It might be part of the 2016 report discussing this prior amendment, but they say we were doing this because it was burdensome to update the cross-references to the federal statutes. The guidelines started with cross-references to the public law. They then had to change them all to the cross-references to the CSA and the other statutes, and they said, we don't want to have to do this every time or worry about not doing it fast enough. So we're just going to move this language that was in the commentary into the text, but that's a clarifying change. It's not a substantive change, and Dawson takes that exact same view when it's discussing the history here. You may not know this, but you seem to know a lot about the drafting history. I'm not sure I understand why the updating of the schedules required this clarifying amendment to be made, or I'm not sure I understand the connection between the two, do you? I think the problem was that in 1987, the guidelines included the public law references, and then they had to change the guidelines one year later to include the U.S. Code references, and then one year later, they did Amendment 268 and said, we're worried we're going to have to keep doing this. It seems complicated. We're just going to take that out and say federal or state law, which is what the guidelines always said in the commentary. They said all of these federal offenses or comparable state offenses, because the point was always from 994H, you have to look to the federal CSA, and that's a baseline, and so the commission said a state offense that matches all of these other definitional criteria from these federal offenses can also count. That's what it always said. At what point did it say what you just said, that you're going to have to take the CSA and you got to match the state against that? I mean, I think Dawson says that. I think 994H tells you that as well. Well, it said comparable state offenses, right? I thought that was the point, was that the note said comparable, and then comparable drops out in the amendment. Right, because in the text, it had the expressed cross-references, and then the footnote, or excuse me, the commentary said comparable state offenses, meaning state offenses that meet the same criteria you'd have to do under the federal offense. So you think the amendment process actually helps your argument, because it shows that this was, this is what Congress meant all along. Yeah, I think the amendment history, combined with 994H, combined with Dawson, certainly help our argument for those reasons. I'd like to make a couple of more points. Before you make those final points, one other question, comparable. You know, certainly comparable, at least in my mind, it doesn't mean perfect concordance, right? The word I would use for perfect concordance would be identical, not comparable. So is it possible that when you compare the New Jersey statute at issue here, and the updated federal statute, which is a little different because of the hemp issue, isn't it possible that those statutes are comparable, but yet, if you apply the categorical approach, comparable never cuts it, because the categorical approach requires perfect concordance? I don't think I would call them comparable, because they fundamentally changed the definition of marijuana, but the point is comparable. Wait a minute, I mean, how many hemp prosecutions are there in the country? I mean, it's- Well, Your Honor, I think- This is a minor, minor alteration. In terms of the number of federal prosecutions under that statute, it's all about marijuana. It's not about hemp, right? I think- As a practical matter. I don't think that's necessarily true, because hemp is just low THC marijuana, and up until this definition changed, the government was not testing marijuana routinely, so we don't actually know if these prior convictions were for hemp or marijuana, because hemp- And there's evidence that the low THC hemp was really selling well on the streets. I mean, that just seems fantastic. I don't think it's fantastical. I can give you two citations, Your Honor. Molitor v. City of Scranton, 2021, Westlaw 3884463 from the Middle District of Pennsylvania, there was an allegation that the substance in question was hemp, not marijuana, and there was this question about what do the laws criminalize? There was a false arrest allegation. They dismissed it there, but it comes up in that case. Another example, US v. Bingen, 318 F Appendix 34. That's the Second Circuit. That's a question about probable cause, but they say in the opinion, you were arrested for marijuana. The lab test later confirms it's hemp. And these lab tests just weren't being done before 2018, because there was no warning. So they were prosecuted for hemp in both cases? I don't know if the prosecution actually went forward. Do you have any cases where there's actual federal prosecution for hemp? I don't think we need a case that says that. I didn't ask if you need one. Do you have any? My point is, we don't know. Do you have any? We don't know. Can you cite any? All you do have is potentially angry customers, right? Sure, Your Honor. But we don't know. But until 2018, because it wasn't being tested, it's very, very possible. Your point is, we don't know. And we'll take the point that we don't know. Right, that's correct. Do you lose if we accept the federal law approach, but we say it's comparing 2012 New Jersey and 2012 federal? We do lose, but I don't think that's the correct comparison for a couple of reasons. The first is that Brown very clearly rejects the interpretation of McNeil that the government is relying on here. Where does it very clearly do that? I think it says Abdulaziz and the other cases. But don't tell me what you think it says. When you said it's very clear, take us to the language. It says the interpretation of McNeil is not contrary to our approach here. And then it says Abdulaziz has the correct interpretation of McNeil. And I do think that is the correct interpretation of McNeil because McNeil was, if you break the categorical approach down into three categories, the first, or two, three steps, excuse me. The first is what are the elements of the predicate? The second is what are the elements or the measure or the definition of the comparator? The third is do the comparison? McNeil is a step one case. McNeil is saying- You didn't have a chance to respond to the September 2nd 28-J letter. So I want you to respond to it now. The opening, do you have that? Let me just grab it, Your Honor. Sure. All right. Let's say in the second full paragraph, I'm sorry, do you have it yet? Yes, now I have it, yes. It says Brown doesn't answer the time in question here. Brown expressly declined to address the time in question in the guideline context. Unlike ACCA, 4B1.2b does not define controlled substance by referencing the CSA's definition of the term. Third, 4B1.2 hasn't changed at any time material to litigation. So they run through three reasons why they say Brown is not inconsistent with what we're saying. Brown doesn't have anything to do with this. Now, catching you on the fly a little bit, sorry if that's unfair, but you hadn't had a chance to respond to this before. I'd like to give you a chance to respond to their take on Brown. Sure. I think the problem is that the government's timing argument relies on an interpretation of McNeil that is not possible after Brown. And I take the point that Brown is about ACCA, not the guidelines. So yes, Brown doesn't resolve the question in that respect, but Brown rejects the reasoning the government is relying on here from both McNeil and Martinez. Brown says McNeil is not a case about what you're saying, government. It is about what was the predicate for at the time of conviction. And McNeil itself, the North Carolina government changed the penalty available for the prior conviction before federal sentencing. And so if he had been convicted at that day, he would have not been subject to a felony. And Brown said, that means I didn't get a felony conviction. Or excuse me, McNeil said, that means I don't get a felony conviction. And the Supreme Court says no. And McNeil is the Supreme Court. Right. The Supreme Court says what matters is that the defendant's offense was for, was the brackets for this case would be, if we applied McNeil to this case would be, what matters is that the defendant's offense was for a controlled substance offense when he was convicted, even if that substance was later deregulated. Otherwise, subsequent changes in state law could erase an earlier conviction for purposes of the guideline. Sounds like McNeil is saying, you do look back to 2012. Right. You look back to 2012 to define the elements of the predicate, not to define the comparator. Well, that's why we get back to, if we apply the categorical approach the way Lael Vega does, you win. Because this New Jersey statute does not map onto the CSA. And I think that you have to apply the categorical approach. I think you have to apply the categorical approach. And if I could, your honors, I'd just like to make a couple of more quick points about the Martinez issue. I mean, your honors haven't asked about it, but Brown says pretty clearly that you can't rely on Martinez the way the government does because Martinez is just saying, you look to when the federal consequences attach. And in the sentencing context, that's at the time of sentencing. And 1B111 and the Sentencing Reform Act both confirm that by saying, you're using the guidelines manual and effective sentencing because that's when the consequences are attaching. If there are no further questions on the timing issue, I'd like to just briefly go back to the federal versus state law. Yeah, one minute to wrap up because we've got a lot, you've done a great job for your client. Kudos to you and to your firm, we are appreciative. But make your last point, give you a minute to do it, okay? I think under the government's interpretation, you would run into some serious problems, not just because of the categorical approach, but because of Jerome. And I'd like to give you three quick reasons why Jerome applies here. The first is that ordinary interpretive principles from statutes apply to the guidelines. This court has said that. The second, this court has applied Jerome to the guidelines. Then Judge Alito did it in prey. He did it using a case called Dickerson, which applied Jerome. Every other circuit has applied Jerome to the guidelines. And the third is that government, as the government said today, does not dispute that Jerome applies. It simply claims Jerome is overcome. Yeah, there you go, Jerome overcome. Right, and we don't think that's correct for the reasons I've explained today, for the reasons I've explained in my brief. I think offense under state law is just telling you, assuming it meets these other criteria, as Shuler, as Stoeckling say you have to do, does it meet those criteria? It's a conviction under state law. Okay, now I would point to you- Just so we're clear, I got to ask you one more question, because I want to make sure I understand the practical ramifications of your argument. I want you to assume for a minute that instead of we're dealing with marijuana here, we're dealing with heroin, or let's use cocaine, because it's more apt in cocaine, because you deal with these isomers, right, in some of the cocaine cases. And I want you to assume that somebody's convicted of trafficking 100 kilos of cocaine in the year 2000, and then they come before a federal judge in New Jersey on a gun crime, they've gotten out of jail, and they get picked up on a gun charge, and the sentencing judge needs to figure out whether that 100 kilo of cocaine trafficking is a qualifying offense. And your argument is that if New Jersey law has one little distinction regarding the isomers used in the cocaine, I'm not a chemist, so I'm not good with the science, but there's one little difference between the CSA on cocaine and New Jersey law on cocaine. The federal district judge in sentencing that guy is not supposed to consider the conviction for 100 kilos of cocaine. I disagree with that for two reasons. The first is that I think the question you just asked, Your Honor, about what is an isomer is actively being litigated in this circuit, and the resolution of that, along with some general questions. No, I'm asking you to, no, I'm, baked into my hypothetical is that there's a difference between New Jersey law and the CSA, okay? Yes, Your Honor. I'm not sure you understood my hypothetical. No, I do understand. So New Jersey schedules cocaine. The CSA schedules cocaine. There's a slight difference so that if the categorical approach is applied, the categorical approach is not satisfied. You are saying that, yes, indeed, the federal district judge cannot count 100 kilo of cocaine conviction from 22 years ago. My first point that I was probably inartfully making, Your Honor, is I just think there are a lot of predicate questions you have to answer before you get to that comparison. You've got to figure out how the definition of isomer works. Assuming they're all the way, then my second answer is no. It doesn't count as a controlled substance offense, but. Because in a rational world, there's nothing that any normal person would call a controlled substance offense if you're trafficking 100 kilos of cocaine. I mean, that's what the Supreme Court says when it's dealing with marijuana in Moncrief. It's what it says when it's dealing with burglary in Taylor. And it looks at these things. Now, I would say. That's the best, I think that's the best answer. It doesn't make any sense, but the Supreme Court is making us do it. But I think that's also the result from Brown. The same assumption Your Honor just gave me about heroin, that happens in Brown as well. And it's because you're doing the timing comparison that changes there. Once you assume controlled substance isn't fixed. We could keep talking. We probably could. If I could just say one last thing that I tried to get to three times, Your Honor. If you look to 2L1.2, where it defines a drug trafficking offense as an offense under federal, state, or local law involving a controlled substance. If the government's position here is true, then conviction for alcohol in a dry county counts. And I simply don't think that's what the commission intended. We got your alcohol and cough medicine thing from before. Good. Thank you very much, Ms. Stemple. Well argued, Mr. Ramsey. We'll hear you on the ballot. Just so that we're not lost on what we're asking for is for this court to vacate the defendant's conviction and to remand this case for de novo resentencing. I'm happy to answer any other questions that the court may have, but I'm also happy to rest on my briefs. You're good? Okay, we're good. Thanks very much. Appreciate everybody coming and arguing this. We got it under advisement.